```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
BONNIE ORNELAS-SANCHEZ,

                    Plaintiff,          12-CV-0587(MAT)

          v.                            DECISION
                                        and ORDER
CAROLYN W. COLVIN, Commissioner
of Social Security,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff Bonnie Ornelas-Sanchez ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##7,9.

## BACKGROUND

On September 24, 2008, Plaintiff filed applications for SSI and DIB alleging that she was disabled beginning August 26, 2007 due to anxiety and depression. T. 48-49, 82-89.[1] Her application was initially denied, and Plaintiff subsequently requested a

---

[1] Numerals preceded by "T." refer to pages from the transcript of the administrative record, submitted by Commissioner as a separately bound exhibit in this proceeding.

hearing before an Administrative Law Judge ("ALJ"). T. 22-23. Plaintiff appeared without counsel and testified at a hearing held on January 13, 2011 before ALJ Stanley A. Moskal, Jr., in Buffalo, New York. A written decision was issued on September 13, 2011, finding that Plaintiff was not disabled. T. 11-17.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"),[2] the ALJ found: (1) Plaintiff had not engaged in substantial gainful activity since August 26, 2007; (2) her severe impairments were "mental health problems to include anxiety and depression and a history of substance abuse and alcohol abuse in alleged remission;" (3) Plaintiff's impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpart P, Appendix 1, and that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the nonexertional limitations of simple repetitive work in a low-contact setting; and (4) Plaintiff could return to her past relevant work. T. 13-16. As such, the ALJ concluded that Plaintiff was not disabled. T. 16.[3]

---

[2] See 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).

[3] For purposes of the Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 23, 2012. T. 1-4, 6-7. Plaintiff then filed this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Dkt.#1.

In the present motion, Plaintiff alleges that the decision of the ALJ is erroneous and not supported by substantial evidence on the grounds that: (1) The ALJ failed to find mental retardation a severe impairment; (2) the RFC finding was not supported by substantial evidence or the applicable legal standards; (3) the credibility determination was not supported by substantial evidence; and (4) the ALJ erred in finding Plaintiff not disabled based upon an alleged ability to perform past relevant work as a prep cook. Pl. Mem. (Dkt.#7-1) 1. The Commissioner cross-moves for judgment on the pleadings on grounds that the ALJ's decision is correct and is supported by substantial evidence. Comm'r Mem. (Dkt.#10) 2.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. Medical Evidence

On January 27, 2009, Plaintiff underwent an Adult Psychiatric Evaluation by Renee Baskin, Ph.D., during which she reported being in counseling on and off since childhood, including psychiatric hospitalization while in foster care. T. 227. Medications were Zoloft and Vitriol. Id. Her symptoms included difficulty falling asleep, dysphoric mood, crying spells, feelings of hopelessness, fatigue/loss of energy, and thoughts of death or suicide. T. 227-28. Anxiety-related symptomology was remarkable for excessive apprehension or worry, restlessness, and muscle tension; thought disorder symptomology was remarkable for auditory and visual hallucinations; cognitive symptomology was remarkable for short-term memory deficits and concentration difficulty. T. 228.

Plaintiff's attention and concentration were mildly impaired due to anxiety or nervousness in evaluation and the doctor noted limited intellectual functioning. T. 229. Her recent and remote

memory skills were mildly impaired, general fund of information was somewhat limited, and intellectual functioning was estimated to be in the deficient range. Id. Plaintiff reported that her roommate did the cooking, cleaning, and shopping. Id. There appeared to be a significant amount of social withdrawal. Id.

Dr. Baskin opined that Plaintiff would have moderate limitations in maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, making appropriate decisions, relating adequately with others, and dealing appropriately with stress. T. 230. The results of the examination were consistent with psychiatric and cognitive problems that may interfere to some degree with Plaintiff's daily functioning. Id. Diagnoses were major depressive disorder, recurrent, with psychotic features; anxiety disorder NOS; and mild mental retardation. Id. Continued treatment and perhaps more intensive intervention was recommended, and prognosis was guarded given Plaintiff's history and presentation at examination. Id. She appeared to need assistance in managing funds due to cognitive limitations and psychiatric illness. Id.

Dr. Baskin also evaluated Plaintiff's intelligence on January 27, 2009, revealing a verbal IQ of 63; performance IQ of 62; and full-scale IQ of 59; placing Plaintiff in the mildly mentally retarded range of intellectual functioning. T. 234.

In February, 2009, Plaintiff sought treatment for depression at Jericho Road Family Practice. T. 241. There, she was diagnosed

with depressive disorder NOS, was started on Effexor, and was encouraged to participate in counseling. Id.

A Psychiatric Review Technique form completed on May 4, 2009 by non-examining State Agency Review Physician Cheryl Butensky suggested moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. T. 260. Dr. Butensky found that the results of Plaintiff's adult IQ test conducted earlier in 2009 were not credible based on her higher childhood IQ score with some question as to whether that was underestimated due to Plaintiff's bilingual status. T. 251. She opined that Plaintiff's intelligence was "likely in the low average to borderline range." Id.

The Mental Residual Functional Capacity form completed by Dr. Butensky indicated moderate limitations in 12 of 20 categories of mental abilities required to perform basic work activities, such as understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; and performing activities within a schedule. T. 265.

Treatment notes from Lakeshore Behavioral Health dated March 11, 2011 show that Plaintiff presented with irritability, sadness, lack of appetite, insomnia, and loss of energy and interest. She acknowledged past drug abuse and legal issues, including going to jail for stabbing a woman. T. 300. At Lakeshore, she was diagnosed with major depressive disorder, trichotillomania (hair pulling), cocaine and cannabis dependence in

remission, nicotine dependence, and alcohol abuse. T. 302. A psychiatric evaluation in March or April of 2011 shows that Plaintiff was assigned a GAF of 53.[4]

### III. **Non-Medical Evidence**

Plaintiff was born on January 1, 1972 and was 35 years old on the alleged onset date of disability. T. 86. She has a ninth grade education and attended special education classes. T. 118, 203. She had various short-term work, including working as a prep cook and in a sausage-making facility. T. 115, 155.

A partial report, apparently prepared by a county social worker in September, 1985, indicates that Plaintiff had a history of behavioral problems and had been placed in several foster homes. T. 202. Test results suggested she had an intellectual impairment or learning disability, but it was suggested that she be re-tested in Spanish. T. 204. A psychological evaluation when Plaintiff was 13 years-old showed functioning in the borderline range of intelligence in performance (IQ 79) and verbal (IQ 72). T. 209-10. The psychologist did not believe re-testing in Spanish would indicate a significant difference in her intellectual functioning. T. 210.

---

[4] Global Assessment of Function or GAF rates overall psychological functioning on a scale of 0-100 that takes into account psychological, social, and occupational functioning. A GAF score in the range of 50-60 represents moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks). See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders p. 32 (4th Ed. 1994).

**IV. <u>The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.</u>**

    **A.    Severity of Impairment**

Plaintiff first contends that the ALJ failed to apply the appropriate legal standard when he did not find mild mental retardation to be a severe impairment. Pl. Mem. (Dkt. #7-1) at 9.

For an impairment to be considered severe, it must more than minimally limit the claimant's functional abilities, and it must be more than a slight abnormality. 20 C.F.R. § 416.9249(c). It must also be "medically determinable," established through medically acceptable clinical or laboratory diagnostic techniques demonstrating the existence of a medical impairment. <u>Skiver v. Colvin</u>, No. 12-CV-899, 2014 WL 800228, *6 (W.D.N.Y. Feb. 28, 2014); 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the individual's statement of symptoms. 20 C.F.R. § 416.908.

For purposes of Social Security benefits, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." <u>See</u> Section 12.05 of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Mental retardation is established when one of four sets of criteria are met; at issue here are the criteria contained in section 12.05(C), which requires both (1) "[a] valid

verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. A claimant who is found to meet these requirements is presumed disabled at step three without further inquiry. See 20 C.F.R. § 404.1520(a)(4)(iii).

Here, Plaintiff achieved IQ scores between 72 and 79 at age 13, and the test administrator thought the scores underestimated her intelligence because she was bilingual. T. 209. Having reviewed the scores and the medical record as a whole, State Agency Review Physician Cheryl Butensky concluded that Plaintiff was not mentally retarded. T. 254. The ALJ gave great weight to Dr. Butensky's opinion, which he was entitled to do. See Williams v. Astrue, No. 06-CV-1355, 2011 WL 831426, at *11 (N.D.N.Y. Mar. 3, 2011) ("An ALJ may rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability.")(citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(C), 404.1527(f)(2), 416.912(b)(6), 416.913, and 416.927(f)(2)).

Although the consultative examiner diagnosed Plaintiff with mild mental retardation (Pl. Mem. 9), the ALJ was not required to accept this diagnosis as there was no evidence of a key diagnostic criterion for mental retardation: subaverage intellectual functioning prior to adulthood. T. 209. Likewise, Plaintiff's

reliance upon Dr. Baskin's intellectual assessment, which yielded IQ scores of 63 (verbal), 62 (performance), and 59 (full-scale), is not dispositive.[5] The ALJ had the ability to find Plaintiff's subsequent IQ scores invalid because they were inconsistent with evidence in the record. No treatment notes in the record pre-dating the consultative examination mention any intellectual limitations, and Plaintiff reported independence in daily activities, including money management, and performed past work as a cocktail waitress and prep cook. T. 115, 129-33, 251. While it is preferable that the ALJ state his basis for his decision to reject a current IQ score, see Miller v. Astrue, No. 07-CV-1093, 2009 WL 2568571 (N.D.N.Y. Aug. 19, 2009), any purported error here is harmless because the record lacks substantial evidence to support the determination that Plaintiff had an IQ between 60 and 70. As such, there was no reason for the ALJ to evaluate Plaintiff under § 12.05(C).

Even assuming, arguendo, that the ALJ was required to accept Plaintiff's more recent IQ scores as valid and erred by rejecting those scores in favor of the earlier scores, Plaintiff would still have to satisfy the remaining criteria of Listing 12.05(C), which is not supported by this record. See Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (requiring a claimant show he meets all the criteria of a Listed impairment).

---

[5] Significantly, the ALJ did consider Plaintiff's adult IQ score in addressing the medical evidence and assessing Plaintiff's RFC.

## B.   RFC Finding

Plaintiff contends that the ALJ's finding is not supported by substantial evidence in the record. Pl. Mem. 12-15.

The RFC determination is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2). However, "an ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record . . . . Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Lewis v. Comm'r, No. 00-CV-1225, 2005 WL 1899399, *3 (N.D.N.Y. Aug. 2, 2005).

The ALJ's finding that Plaintiff possessed the RFC to perform simple, repetitive work in a low-contact setting is mirrored by Dr. Butensky's assessment of moderate limitations in several work-related areas. T. 14, 262. Dr. Butensky's opinion, in turn, draws support from the clinical findings contained in the record, including normal appearance, orientation, eye contact, mood, affect, speech, memory, attitude, behavior, thought process, concentration attention, and abstraction. T. 222-309. Plaintiff's minimal treatment (she saw her mental health provider six times in two years) and daily activities (Plaintiff testified that she swept, mopped, wiped up and put food away) support the doctor's conclusion. T. 132-33, 285-314.

Further, Dr. Butensky's report was based almost entirely on Dr. Baskin's evaluation results and was therefore consistent with a large portion of the medical record. Notably absent from the

record is a contrary opinion from any of Plaintiff's treating providers. For these reasons the ALJ properly relied on the opinion of the State Agency Review Physician. See Diaz v. Shalala, 59 F.3d 307, 313 n. 5 (2d Cir. 1995) (opinions of non-examining physicians can constitute substantial evidence when they are consistent with other medical evidence of record).

To the extent that Plaintiff challenges the RFC in that it failed to accommodate her moderate limitations in understanding and memory, concentration and persistence, social interaction, and adaptation (Pl. Mem. 14-15), such an argument does not find support in the record.

In his RFC finding, the ALJ limited Plaintiff to simple, repetitive work in a low-contact setting. T. 14. Dr. Butensky specifically opined that Plaintiff's limitations could be accommodated by such limitations, and Dr. Baskin did not state otherwise. T. 227-35, 262. The ALJ discussed both physicians' findings with regard to Plaintiff's limitations and incorporated them into his RFC assessment. The RFC therefore accounted for those limitations and was entirely consistent with the opinion that Plaintiff could perform unskilled work in a low-contact working environment. Indeed, this Court has held that when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a claimant to only unskilled work sufficiently accounts for such limitations. See Rodriguez v. Colvin,

No. 13-CV-6360, 2014 WL 3882191, at *17 (W.D.N.Y. Aug.6, 2014) (finding that where the ALJ determined that a claimant "has a certain amount of difficulty with concentration, persistence or pace, consisting of some difficulty remembering what someone tells him to do and some difficulty focusing on tasks," the ALJ accounted for those limitations by limiting the claimant to work requiring simple instructions and directions (internal quotation marks and citations omitted)); see also Woodmancy v. Colvin, No. 12-cv-991, 2013 WL 5567553, at *4 (N.D.N.Y. Oct.9, 2013) (ALJ did not err when she failed to make specific accommodations for a claimant's impaired ability to cope with work stress, because the ALJ relied on the opinion of a medical expert, who opined that the claimant could still perform basic work tasks despite his difficulty handling stressors).

Thus, the ALJ's RFC determination is supported by substantial evidence.

### C. Plaintiff's Credibility

Plaintiff contends that the ALJ did not use the appropriate legal standards in assessing her credibility. Pl. Mem. 16-18.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a

medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling ("SSR") 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Also, "[i]f the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia,

Valente v. Sec'y of HHS, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the previously-determined RFC. T. 16. He then provided a thorough explanation supporting his credibility finding, discussing Plaintiff's daily activities, lack of medication, lack of mental health treatment, and aggravating factors, including substance abuse. Id. Though the record contains extensive evidence concerning Plaintiff's substance abuse history, she nonetheless denied substance abuse to Dr. Baskin during her evaluation. T. 221, 228, 233, 239, 288, 291, 298, 302, 306-07. During the period of alleged disability, Plaintiff underwent drug and alcohol counseling but did not pursue mental health treatment that was made available to her. The ALJ noted her missed appointments at Lakeshore Behavioral Health and stated that her failure to seek the appropriate mental health treatment for her anxiety and depression "clearly raises doubt concerning [her] motivation for optimum management of her symptoms." T. 16. The Court notes that Plaintiff was not being penalized for her lack of diligence in seeking mental health treatment, but the lack of a supporting record casts doubt on the severity of her symptoms as reported to Dr. Baskin. Cf. Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n. 6 (E.D.N.Y. Jan. 3, 2008) (noting that it "is a questionable practice to chastise one

with a mental impairment for the exercise of poor judgment in seeking rehabilitation").

In supporting the ALJ's credibility determination, The Court affords special deference to the ALJ, who had the opportunity to observe the witness' demeanor while testifying. See Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

Here, the ALJ applied the regulatory factors to be considered per 20 C.F.R. § 416.929 in his written decision, and the Court finds that the ALJ's credibility determination is proper as a matter of law, and is supported by substantial evidence in the record.

### D.  Step Four Finding

Plaintiff argues that the ALJ erred in finding that she could perform her past relevant work as a prep cook. Pl. Mem. 18-19.

At step four in the five-step sequential analysis, the ALJ must consider whether a claimant has the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In order to prevail under step four, "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted). In determining whether a claimant can perform his or her past relevant work as generally performed, "[t]he inquiry ... is not whether a claimant is able to

perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). The Dictionary of Occupational Titles ("DOT") is used to describe jobs "as they are generally performed," Jasinski, 341 F.3d at 185, and the Commissioner is permitted to take administrative notice of the DOT. See 20 C.F.R. § 404.1566(d)(1); see also Petrie v. Astrue, 412 Fed. Appx. 401, 409-10 (2d Cir. 2011) (summary order) (finding that an ALJ can rely on a DOT job classification to characterize plaintiff's past work as "unskilled" without consulting a vocational expert).

The ALJ found that, in comparing Plaintiff's RFC with the physical and mental demands of her past work as a prep cook and on a production line, the Plaintiff was capable of performing past relevant work as "actually and generally performed." T. 16-17. The DOT classifies the jobs of prep cook and "production line" as medium, unskilled work. See DOT Job Code Nos. 317.687-010 (cook helper: assists workers engaged in preparing foods for hotels, restaurants, or ready-to-serve packages by performing any combination of following duties: washes, peels, cuts, and seeds vegetables and fruits; cleans, cuts, and grinds meats, poultry, and seafood; weighs and measures designated ingredients; carries pans, kettles, and trays of food to and from work stations, stove, and refrigerator; stores foods in designated areas; cleans work areas, equipment and utensils; removes garbage; distributes supplies,

utensils, and portable equipment); 529.686-070 (production helper: feeds machine hoppers with ingredients, transports and packs finished products, and performs any combination of tasks in food processing and packaging establishment); available at http://www.occupationalinfo.org, (last accessed 10/17/2014). Neither Plaintiff's testimony nor the DOT description of these jobs indicates requirements inconsistent with Plaintiff's assessed RFC.

As the ALJ briefly discussed, there is no evidence that the Plaintiff had any functional limitations that would preclude this type of work. While the Plaintiff had moderate limitations in social functioning and in concentration, persistence, and pace, she did not have a significant cognitive or intellectual impairment that would preclude her from performing the range of tasks described above. In this regard, the Court notes the fact that the Plaintiff was able to perform certain activities such as sweeping, mopping, and putting food away at home. T. 14, 15.

The ALJ's finding that the Plaintiff could perform this past relevant work as a prep cook or on a production line as generally performed was sufficient to negate a finding of disability at step four. Grogg v. Comm'r, No. 11-CV-1381, 2014 WL 1312325, at *13 (N.D.N.Y. Mar. 31, 2014). Accordingly, the ALJ's step four finding was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt.#7) is denied, and the Commissioner's cross-

motion for judgment on the pleadings (Dkt.#9) is granted. The Complaint is dismissed in its entirety with prejudice.

    ALL OF THE ABOVE IS SO ORDERED.

                                      S/Michael A. Telesca

                                      MICHAEL A. TELESCA
                                United States District Judge

Dated:    Rochester, New York
            October 21, 2014